NICKOLAS J. LAUMANN,

        **Plaintiff,**

    **v.**                                **Case No. 07-C-1046**

DR. HEIDORN, JANE DOE #3, WILLIAM POLLARD,
MICHAEL BAENEN, RICHARD RAEMISCH,
SGT. LONGZINE, SGT. KAPPISH, KATHY LEMENS,
JEAN LUTSEY, HEIDI DANBROVA,
ROXANNE, KLARKOWSKI, JAMIE WERTEL,
JEANANNE GREENWOOD, and JOHN DOES 1 and 2,

        **Defendants,**

---

## DECISION AND ORDER

      Plaintiff, a Wisconsin state prisoner, brings this § 1983 action alleging that defendants violated his Eighth Amendment rights by failing to give him proper medical attention when he was an inmate at Green Bay Correctional Institution ("GBCI"). Before me now are defendants' motions for summary judgment.[1]

      The facts may be summarized as follows: On June 25, 2006, plaintiff vomited blood and experienced chest pains in his cell. He notified a guard, who he claims ignored his pleas for assistance. He again requested medical attention, and another guard sent him to see a nurse, who said she could not help. Plaintiff then passed out in his cell. The next morning a correctional officer escorted plaintiff to the health service unit (HSU). At the HSU, nurse Kathy Lemens checked his vital signs and gave him Advil and Pepto-bismol.

---

[1]Also before me is plaintiff's motion to compel discovery. However, I will deny such motion because plaintiff presents no evidence that he attempted to confer with defendants before asserting it, as required by Fed. R. Civ. P. 37(a)(1).

She encouraged him to drink fluids and eat, and she placed him in a cell where nurses could recheck his temperature. The next day, plaintiff felt better and returned to his cell.

On July 5, plaintiff notified nurse Jeananne Greenwood, the health services supervisor, of his condition. Greenwood had Dr. Richard Heidorn review plaintiff's medical file, and she scheduled an appointment to test plaintiff's blood count. Plaintiff became ill again, and staff returned him to HSU, where nurse Jean Lutsey examined him. On July 14, 2006, Heidorn examined plaintiff, and several days later, Lutsey followed up. Because of plaintiff's vomiting, Heidorn referred him to a hospital emergency room, where physicians diagnosed probable gastritis, recommended a gastroenterology consult and suggested Pepcid. Heidorn and Lutsey questioned plaintiff, who admitted possible problems with bulimia. They then scheduled an appointment for him with the University Hospital and Clinic (UWHC) for an upper gastrointestinal series and contrast barium enema. Until then, HSU continued to re-evaluate plaintiff. An esophagram revealed that plaintiff had Achalasia, a disorder of the esophagus affecting the ability to swallow. Heidorn ordered weekly weight and vital checks. He also prescribed liquid supplements with every meal. Throughout September, plaintiff lost weight and was unable to swallow medication. Heidorn ordered a class III upper endoscopy, which looks inside the body by inserting a tube in the throat. HSU continued to monitor plaintiff's weight every week.

On October 5, 2006, UWHC performed the upper endoscopy, which confirmed the Achalasia. UWHC recommended medication, a hot liquid diet, a dilation procedure and noted possible surgical evaluation in the future. Heidorn reevaluated plaintiff and scheduled a balloon dilation procedure. Plaintiff was upset about his treatment and wrote a letter to the warden, to which the Warden's deputy responded.

2

UWHC monitored plaintiff's symptoms and performed another endoscopy which was normal. Plaintiff also received Botox injections and had his diet and blood pressure medication changed. Ultimately, Dr. Heidorn reduced plaintiff's checkups from every week to every other week. On or about December 1, 2006, plaintiff transferred to from GBCI to Waupun Correctional Institution.

With respect to defendants' summary judgment motion, I will grant summary judgment only if taking all facts in the light most favorable to plaintiff, no reasonable jury could find in plaintiff's favor. I note initially that defendants failed to provide plaintiff with the text of Civil Local Rule 56.2 (E.D. Wis.) or Fed. R. Civ. P. 56 (e) and (f). In pro se litigation, the opposing party must include with their motion for summary judgment a short and plain statement that any factual assertion in their affidavits or documentary evidence will be accepted as true unless the pro se litigant submits his own affidavit or other documentary evidence to contradict the factual assertions. Civil L.R. 56.1 (a) (1) (E.D. Wis.). Additionally, the text of Fed. R. Civ. P. 56(e) and (f), Civil L.R. 56.1, Civil L.R. 56.2 and Civil L.R. 7.1 must be included. Civil L.R. 56.1 (a)(2) (E.D. Wis.). Civil L.R. 56.2 is especially important because it warns pro se litigants about the consequences of a failure to respond to proposed findings of fact or to propose their own findings of fact.

Nonetheless, where no prejudice has occurred, the failure to give proper warnings may be excused. See Sellers v. Henman, 41 F.3d 1100, 1102 (7th Cir.1994); Timms v. Frank, 953 F.2d 281, 286 (7th Cir. 1992). In the present case, plaintiff filed a brief, proposed findings of fact and an extensive affidavit in response to defendants' motion. Thus, defendants' failure to provide him with copies of all applicable rules did not prejudice plaintiff.

3

First, I will grant summary judgment to defendant Danbrova, who was no longer employed at GBCI when plaintiff was treated. As to the other defendants, to establish a violation of the Eighth Amendment, plaintiff must show (1) an objectively serious medical condition to which (2) defendants were deliberately, subjectively indifferent. Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008). Officials are deliberately indifferent if they know of and disregard an excessive risk to inmate health or safety. Dunigan ex rel. Nyman v. Winnebago County, 165 F.3d 587, 591 (7th Cir. 1999). Plaintiff must show that the defendants were aware of facts from which they could infer that a substantial risk of serious harm existed and that they did draw such inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Isolated instances of neglect, taken alone cannot support a finding of deliberate indifference. Gutierrez v. Peters, 111 F.3d 1364, 1375 (7th Cir. 1997). I must examine the totality of an inmate's medical care. Id.

In the present case, based on the totality of plaintiff's medical care, no reasonable jury could conclude that defendants were deliberately indifferent to plaintiff's medical condition. Although plaintiff had a serious medical need, defendants took his condition seriously and treated him attentively. Between June 25, 2006 and November 30, 2006, plaintiff saw a physician or registered nurse over thirty times. Defendants gave him numerous tests and took him outside of GBCI for treatment on several occasions. Defendants provided escalating treatment, and they diagnosed and satisfactorily treated plaintiff's condition within four months. They clearly were not indifferent.

No reasonable jury could find that the non-medical defendants intentionally delayed plaintiff's medical care. Even if plaintiff's vomiting and continued weight loss alerted them to a substantial risk of serious harm, the record shows that they did not ignore it. The first

4

night plaintiff vomited, he spoke with two different nurses, and prison guards took him to see the nurse the next morning. He continued to see nurses and doctors throughout his stay at GBCI. Non-medical prison officials can reasonably rely on treatment by medical staff. See Greeno v. Daley, 414 F.3d 645, 656 (7th Cir. 2005). Even if there were isolated instances of neglect, the totality of plaintiff's medical care shows that correctional officers were not indifferent to his condition.

And, as indicated, no reasonable jury could find the medical defendants deliberately indifferent. Even assuming arguendo that plaintiff's condition was for a time wrongly diagnosed or inadequately diagnosed, neither medical malpractice, an incorrect diagnosis or improper treatment constitutes a violation of the Eighth Amendment. Gutierrez, 111 F.3d at 1374; Duckworth, 532 F.3d at 679. Defendants worked to diagnose plaintiff's condition and treat him. Plaintiff's disagreement with defendants' medical opinions and treatment decisions does not make defendants deliberately indifferent.

No reasonable jury could find that defendants were deliberately indifferent to plaintiff's serious medical needs. Accordingly, I grant summary judgment to defendants.

For the foregoing reasons,

**IT IS ORDERED** that plaintiff's motion to compel (Docket #39) is **DENIED**.

**IT IS ORDERED** that defendants' motion for summary judgment (Docket #45) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant Heidi Danbrova's motion for summary judgment (Docket #73) is **GRANTED**.

5

**FINALLY, IT IS ORDERED** that this case is **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 21 day of September, 2009.

/s
LYNN ADELMAN
District Judge

6